UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LYNN THOMAS, ET AL                          CIVIL ACTION NO. 06-0764

versus

                                            **Referred to:**
CITY OF SHREVEPORT, ET AL                   **MAGISTRATE JUDGE HORNSBY**


**MEMORANDUM RULING**

**Introduction**

     Lynn Thomas ("Plaintiff") filed this civil rights action against five Shreveport police officers, former Chief of Police Mike Campbell, and the City of Shreveport.  The "Police Department" and the Municipal Civil Service Board were also named as defendants, but they were dismissed by prior orders.  Plaintiff alleges that Defendants are liable to him based on the use of excessive force in connection with what Plaintiff alleges was a false arrest.  Before the court is a Motion for Summary Judgment (Doc. 47) filed by all remaining Defendants.

**Summary Judgment Standard**

     Under Fed.R.Civ.P. 56(c), a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  An issue is "genuine" if there is sufficient evidence so that a reasonable

jury could return a verdict for either party.  Anderson, supra; B & A Pipeline Co. v. Dorney,

904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the

court of the basis for its motion, and identifying those parts of the record that it believes

demonstrate the absence of genuine issue of material fact.  Celotex Corp. v. Catrett, 106 S.Ct.

2548 (1986). If the moving party carries his initial burden, the burden then falls upon the

nonmoving party to demonstrate the existence of a genuine issue of a material fact.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Summary Judgment Evidence**

**A. Plaintiff's Deposition**

Plaintiff testified at his deposition that the relevant events happened on an evening

when he was hosting a Memorial Day weekend party in his backyard.  Attendees were

enjoying barbecue and dominos.  Plaintiff drank one beer.  Plaintiff was alerted that the

people who lived across the street from his house were fighting in his front yard.  The

combatants were two women, both armed with sticks, who were attacking a man who they

had chased into Plaintiff's yard.

Plaintiff testified that the man asked Plaintiff to help him. Plaintiff tried to do so by

getting between the women and trying to run them off down the street.  Plaintiff denied that

either of the women hit him or tried to fight back.  Plaintiff asked his fiancee to call the

police.

By the time the first police unit arrived, the people who had been fighting in the yard had moved on.  In the meantime, however, Plaintiff had heard someone down the street say that a man had been stabbed.  Plaintiff assumed that it was the same man who had been in his yard.  He and his friend, Lonnie Robinson, began walking down the street "to go see could we help or whatever."  The first policeman arrived at that time.  A "bunch of people" were in their yards down the street and "crowding around."

When the first patrol unit pulled up, an officer jumped out of the car and yelled for Plaintiff and Mr. Robinson to get back.  Plaintiff tried to tell the officer that he was the person who called the police, and he tried to tell the officer who had been fighting.  The officer yelled and cursed, so Plaintiff turned and walked away.  The next thing Plaintiff remembers is that he was pushed to the ground, which he assumes was done by the same officer he had just spoken to.  Plaintiff did not know the officer's name.  He described him as tall, kind of heavy set, bald-headed and black.

Plaintiff testified that, after he was pushed to the ground, he was hit, beaten, and stunned with a Taser.  He could not see who was striking him; he could only feel it.  He was hit in his eye, knee, back, and side.  Plaintiff testified that he was on his stomach on the ground during these events.  He testified that the Taser left several burn marks on his left shoulder and at the base of his neck.

Plaintiff was eventually handcuffed and arrested.  After bail was posted, Plaintiff went to the hospital to have his eye checked.  He was referred to an eye clinic, which gave him

medication, and to which Plaintiff returned for several follow-up visits.  Plaintiff testified to the accuracy of the photographs attached to his original complaint, which depict a swollen eye.  Plaintiff was not able to identify either the officer he initially came into contact with or any other officer allegedly involved in the events.

**B. Johnny Elie Deposition**

Plaintiff and Defendants submit the deposition of Officer Johnny Elie, who was the officer principally involved in the physical confrontation with and arrest of Plaintiff.  A complete copy of the deposition is attached to Plaintiff's materials. Officer Elie testified that he was on duty when he received a radio transmission that officers needed assistance.  He quickly arrived at the area, where Officers  Morman and Dailey were already on the scene. Elie testified that people had been fighting, standing on top of each other, hitting each other with objects, and generally creating a hostile environment.  There was also a hostile crowd of onlookers in the area, with more people pulling over on the side of the road and trying to see what was going on.

Elie testified that his sergeant (Ronnie Gryder) ordered that the officers clear the whole area.  As part of that process, Sergeant Gryder told Plaintiff to leave, but Plaintiff refused.  Elie then told Plaintiff to leave, but Plaintiff did not respond.  Elie placed his left hand on Plaintiff, who stumbled and fell back.  Plaintiff then jumped up and, according to Elie, clinched his fists and assumed an aggressive stance towards Elie.

Elie's testimony is somewhat confusing as to whether he contends Plaintiff then took a swing at him.  A police report that Elie dictated to another officer included a statement that Plaintiff took a swing at Elie, but there was an internal investigation into the accuracy of that report.  Elie was originally found to have submitted an incomplete report, but he testified that a civil service commission later overturned that decision.  Elie testified at his deposition that Plaintiff "attempted" to take a swing at him.

Elie testified that, after Plaintiff refused to leave and assumed an aggressive stance, Elie "took him down to the ground."  Elie denied that he punched Plaintiff about the face, but he admitted that he suffered a knuckle injury to his right hand that caused him to be off work for some weeks.  When asked if there was a connection between the injured knuckle and Plaintiff's swollen eye, Elie testified "nope" and suggested that it was mere coincidence. He said he did not know how Plaintiff's eye was injured.  Elie admitted that he did use closed fist strikes during the encounter.

Elie testified that Plaintiff was "drive stunned" with a Taser operated by Corporal Dailey.  Plaintiff was allegedly resisting being handcuffed, but he was eventually placed in handcuffs and put in a police car.  Elie testified that he was the officer who charged Plaintiff with Failure to Disperse and Resisting an Officer.

**C. Lonnie Robinson**

Lonnie Robinson, who was with Plaintiff that day, was interviewed by an investigator, who recorded Robinson's remarks.  Robinson stated that Plaintiff had been talking to the

police when, the next thing he knew, they had Plaintiff on the ground and about three officers were "beating the hell out of him" kicking him and using a Taser.  The only evidence of these remarks is found in what purports to be a typed transcript of the interview conducted by the investigator.   The transcript is not signed or sworn to by either Mr. Robinson or the investigator.   There is no basis for this unsworn, unsigned purported transcript to be considered competent summary judgment evidence.  The document will not be considered in assessing the motion.

### D. Police and Medical Records

Plaintiff has also submitted several police reports and medical records.  Some of the reports written by the defendant officers might include evidence that is admissible under F.R.E. 801(d)(2)(A) (admission by party-opponent), but most of the reports are merely cumulative of the affidavit and deposition testimony offered by the defendant officers (discussed below).  Other aspects of the police and medical reports are either hearsay or simply not relevant to determining the issues at stake on the current motion, so they need not be further discussed.

### E. Defendants' Other Evidence

The Defendants submit portions of Officer Elie's deposition, the entirety of which was submitted by Plaintiff and summarized above.  Defendants also submit testimony from each officer defendant.  That testimony will be discussed below with respect to the excessive force claims against the officers, who are each entitled to individual consideration of the claims

against them. <u>Meadours v. Ermel</u>, 483 F.3d 417, 421-22 (5th Cir. 2007).   The false arrest claim will be addressed in a separate section.

**Elements of Excessive Force Claim**

Plaintiff was an arrestee at the relevant time, so his excessive force claims are judged under the Fourth Amendment and its "reasonableness" standard.  <u>Graham v. Connor</u>, 109 S.Ct. 1865 (1989). "[T]he 'reasonableness' inquiry in an excessive force claim is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."<u>Id</u>. at 1872. Applying <u>Graham</u>, the Fifth Circuit has stated that the elements of such a claim are (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.  <u>Ikerd v. Blair</u>, 101 F.3rd 430, 433-34 (5th Cir. 1996).  A Louisiana law claim for excessive force used during an arrest is also based upon the reasonableness requirement of the Fourth Amendment, as well as related state law.  <u>Mathieu v. Imperial Toy Corp.</u>, 646 So.3d 318, 322-23 (La. 1994).

**Ronnie Gryder**

Sgt. Ronnie Gryder testifies in an affidavit that he responded to a call concerning a fight.  He arrived and found a crowd of people in the street fighting, some with sticks and some with bats.  Gryder testifies that he attempted to get the crowd to disperse.  As part of that effort, he approached Plaintiff and told him to turn around and leave.  Gryder testifies

that Plaintiff stopped and stared at him, and Gryder instructed Plaintiff again to leave. Plaintiff, according to Gryder, took a step forward, and Gryder placed his hand on Plaintiff's chest, and he again told Plaintiff to leave. Gryder testifies that Plaintiff took one step back, but he refused to leave. Gryder says that he then turned around and ordered several people to move back. He testifies that he was not involved in the later apprehension of Plaintiff (which resulted in Plaintiff being taken to the ground), did not assist in the handcuffing of Plaintiff, and did not charge Plaintiff with any crime.

Plaintiff has not offered any competent summary judgment evidence that depicts Gryder engaging in any events that could be construed as excessive force. Plaintiff does testify that he was engaged in physical confrontation with an officer whom he described as being black. Defendants responded with an affidavit from Sgt. Larry Cunningham in which he testified that Sgt. Gryder is Caucasian. Doc. 50, Exhibit 8. Furthermore, Officer Elie admits that he was the officer who began the takedown of Plaintiff and hit him.

There is no competent evidence that creates a genuine issue of material fact as to whether Sgt. Gryder committed excessive force. Gryder admits that he was present at the scene of the events, but his mere presence and his unsuccessful attempt to order Plaintiff to leave are not grounds for the imposition of liability. Gryder is entitled to summary judgment.

**Johnny Elie**

Officer Johnny Elie is not entitled to summary judgment on the state or federal excessive force claim. Elie and his sergeant testified that Plaintiff refused several orders to

leave the area, and Elie testified that Plaintiff assumed an aggressive stance towards him with clinched fists, which necessitated the takedown of Plaintiff and the force that followed in an effort to place handcuffs on Plaintiff.  In contrast, Plaintiff testifies that he responded to the order to disperse by turning to walk away from Elie, only to be suddenly tackled and beaten by a policeman. Under the facts presented by Plaintiff, which must be accepted for summary judgment purposes, Plaintiff did not refuse to disperse or commit another crime, and Elie's use of a closed fist and other physical force against Plaintiff was excessive under those circumstances.  Such a Fourth Amendment violation would run afoul of clearly established law that would make clear to a reasonable officer that such conduct was unlawful, so Elie is not entitled to summary judgment based on qualified immunity or otherwise. The conflicts in the summary judgment evidence and the credibility of the witnesses are issues that must be resolved at trial.

**Robert Morman**

Corporal Robert Morman testifies in an affidavit that he responded to a call concerning the fight.  He arrived and found a crowd of people in the street fighting, some with sticks and some with bats.  He tried to get the crowd dispersed.  Morman testifies that he was not involved in the apprehension of Plaintiff, did not assist in the handcuffing of Plaintiff, and did not charge Plaintiff with any crime.

Plaintiff has not come forward with any summary judgment evidence to suggest that Morman was involved in the use of excessive force or the making of a false arrest.  Sgt.

Cunningham testifies that Morman is also Caucasian, which excludes him from any suspicion as the black officer who is alleged to have taken Plaintiff down and arrested him.  Morman is entitled to summary judgment.

**Calvin Lovett**

Officer Calvin Lovett testifies in an affidavit that he responded to a call concerning the fight.  He arrived and observed three ongoing fights, including one involving a woman who was beating a man with a bat or 2 x 4.  Lovett testifies that he took the woman into custody and secured her in his patrol unit.  He then saw other officers struggling with a combative black male, later identified as Plaintiff, with a large group of people in the background. Lovett testifies that he went to assist the officers who were struggling with Plaintiff.

A reasonable officer who comes upon a scene where a fellow officer is wrestling on the ground with an arrestee need not conduct an investigation into the lawfulness of the arrest before he comes to the aid of his fellow officer and helps bring the suspect under control.[1]

---

[1] A similar common sense conclusion was reached in <u>Davis v. Rodriguez</u>, 364 F.3d 424, 431 (2d Cir. 2004), which the Court wrote: "It is clear that when [Officer] Gordon arrived, the struggle between Rodriguez, Rivera and Davis was either still going on or just concluding. Regardless of how the struggle started or whether there had been wrongdoing by [Officers] Rodriguez and Rivera, unless there were at that point significant (to Gordon) indications to the contrary, Gordon was entitled to rely on his fellow officers' determination that the arrest in process was lawful." Gordon pointed a shotgun at the plaintiff's head, which caused the plaintiff to cease resisting and be cuffed. Gordon was granted summary judgment. <u>See</u> <u>also</u> <u>Loria v. Gorman</u>, 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful."); and <u>Provost v. City of</u>

Of course, the assisting officer may use only force that is objectively reasonable under the circumstances. Lovett did not violate the Fourth Amendment by merely assisting in the arrest, but the question remains whether Lovett is entitled to summary judgment with regard to the force he then used.

Lovett testifies that he ordered Plaintiff to "give up his hands," but Plaintiff was resisting and would not do so.  Lovett testifies that he then gave Plaintiff "two palm heel strikes to the upper back."  He then handcuffed Plaintiff. Lovett does not explain in his affidavit what a palm heel strike is or when it is reasonably employed. Officer Chad Dailey mentioned in his deposition that the technique is a blow delivered with the heel of the palm. It appears that Dailey may have testified more on the issue, but the portion of the Dailey deposition that Defendants attached to their motion stops at that point. A court decision, Newlove v. Watson, 2006 WL 322488 (W.D. Mich. 2006), includes this note on the subject:

> A palm-heel strike refers to a blow administered with the heel of the palm (where the hand meets the wrist). This is an extremely hard part of the hand because there are no bones that compress on impact with the target. The strength of this portion of the hand exacts a more penetrating, percussive blow on victims than would a fist.

---

Newburgh, 262 F.3d 146, 155 (2d Cir.2001) ("the direct physical participation of the defendant in the constitutional violation is not alone a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal").

Page 11 of  19

Officer Dailey also testified, with respect to his use of the Taser, that the area between the shoulder blades was targeted because it contains the muscles that control movement of the arms.

The record could be more clear on this issue, but the court has put together enough bits and pieces to conclude that the force used by Lovett, under the facts he describes, was not objectively unreasonable. He ordered the suspect, who was wrestling with other officers, to give up his hands for handcuffing. The suspect, who was on the ground on his stomach, refused. Lovett applied force (without the use of any object or weapon) to an area of the body that would assist in getting a suspect to release his hands, and the force was apparently of some use in getting the suspect handcuffed, which ended the physical altercation and danger to both police and suspect. That was a reasonable use of force that did not violate the Constitution, so Lovett is entitled to summary judgment unless Plaintiff can produce evidence to create a genuine issue of material fact.

Plaintiff did not offer any testimony specific to Lovett. He did testify, in general, about his being handcuffed. The extent of the testimony on the issue is:

> Q    After you were pushed to the ground, do you ever recall a police officer asking you or instructing you to give them your hands to be handcuffed?
>
> A    No.  I don't recall that, but they was beating me.  I imagine if he wanted to handcuff me he could have. They had me on the ground.  If that's what he wanted to do or they wanted to do, it would have been easy.

\* \* \* \*

Q      Okay.  And during this time that this is happening, you
         contend that the police officers were not trying to
         handcuff you at all?

A      I wouldn't think so.  It don't take to beat me to handcuff
         me.

Plaintiff's evasive "I don't recall" and "I wouldn't think so" responses are not sufficient to create a genuine issue of material fact. Lovett offered specific, direct testimony that he ordered Plaintiff to produce his hands and that Plaintiff refused. If Plaintiff wished to defeat summary judgment by creating a genuine issue on this point, he should have testified affirmatively and under oath that no officer asked for his hands or tried to pull his hands behind his back for handcuffing. No reasonable juror could return an excessive force verdict against Lovett based on nothing more than Plaintiff's lack of recollection. Lovett is entitled to summary judgment.

**Chad Dailey**

Officer Chad Dailey testified in a deposition that he and Corporal Morman were dispatched to the fight.  He said they began to make contact with some people and find out what was going on when people started fighting.  People were getting tackled, hit in the head, striking people with a stick, and hitting each other, all in the street.

Dailey said the officers had already taken two or three people into custody, and had had to use a Taser to break up a fight and prevent an attack on an officer when Dailey first

Page 13 of  19

had contact with Plaintiff.  Dailey was talking to other officers about how to handle the situation when he looked up and saw Officer Elie and Plaintiff on the ground fighting. Dailey ran down to help Elie put handcuffs on Plaintiff, as Sgt. Gryder tried to keep the crowd off of the men.

Dailey testified that Plaintiff was on the ground, but he was kicking his legs and trying to get up.  The officers were telling Plaintiff to put his hands behind his back, stop fighting, and quit resisting.  Dailey ran to the scene, knelt down, and told the other officers to clear out of the way because he was going to deliver a "drive stun."  That is the use of a Taser, but with the projectiles removed so that the Taser hand unit is placed directly against the suspect. Dailey testified that he delivered the drive stun so that the other officers could attempt to pull Plaintiff's hands out and handcuff him.  The first effort was unsuccessful, so Dailey repeated his command for the other officers to clear.  He then delivered a second drive stun, at which time Plaintiff was handcuffed and taken to a patrol car for medical treatment.  Dailey said that the drive stun was delivered between the shoulder blades because there are muscles there that affect the movement of the arms. (It is not clear from the record when in the sequence of events Officer Lovett administered the palm heel strikes, but Lovett testified that he was the officer who handcuffed Plaintiff.)

Dailey is also entitled to summary judgment.  Upon observing his fellow officer struggling on the ground with Plaintiff, which Plaintiff admits was happening, Dailey was reasonable to come to the aid of his fellow officer and help bring the suspect under control.

Page 14 of  19

The physical efforts of Officers Elie and Lovett had not succeeded in controlling and handcuffing the suspect. Rather than apply a baton or other device, Dailey chose to try a Taser to gain control of the situation. The first application was not sufficient, which suggests both the degree of Plaintiff's resistance and that the Taser was not an extraordinary use of force under the circumstances. The second application of the Taser was (at least partly) responsible for the suspect releasing his hands, being handcuffed, and ending the physical altercation and danger to police and the suspect. That was a reasonable use of force that did not violate the Constitution. Plaintiff has not created a genuine issue with respect to these facts, as discussed with respect to the claims against Officer Lovett, so Dailey is entitled to summary judgment on the excessive force claim.

**False Arrest**

Plaintiff does not dispute the court minutes that reflect that he pleaded guilty in October 2005 to Failure to Disperse, a violation of La.R.S. 14:329.3.  The charge of Resisting an Officer was dismissed by the prosecutor.  Plaintiff filed this civil action the following year.  Defendants argue that the false arrest claim is barred pursuant to Heck v. Humphrey, 114 S.Ct. 2364 (1994).

Heck held that a tort action, including a Section 1983 claim, is not an appropriate vehicle to challenge the validity of an outstanding criminal judgment.  When a plaintiff asserts tort claims against his arresting officers, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction or

sentence.  If so, the claim is barred unless the plaintiff demonstrates that the conviction or sentence has been reversed on appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.  DeLeon v. City of Corpus Christi, 488 F.3d 649, 652 (5th Cir. 2007).

Plaintiff seeks to prove that his arrest for failure to disperse was made without probable cause.  Under the facts presented in this case, the false arrest claim necessarily calls into question the conviction for Failure to Disperse.  The officer claims that he and another officer ordered Plaintiff to disperse, Plaintiff refused, and Plaintiff was arrested.  Plaintiff contends that he responded to the order by turning and attempting to leave but was then beaten and arrested for no reason.  Under these circumstances, a finding of no probable cause for arrest would necessarily imply the invalidity of the related conviction.  See Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995)(Probable cause for arrest on either of two charges defeated false arrest claim; argument that police lacked probable cause to arrest for disorderly conduct or resisting a search were subject to Heck in the absence of an invalidation of a conviction for resisting a search).

Plaintiff's response to the Heck issue is that Heck should not apply because Plaintiff is not a prisoner whose Section 1983 action could come into conflict with habeas corpus proceedings.  The circuits are divided, but the Fifth Circuit has held that a person who is not in custody, and therefore ineligible for federal habeas relief, is nonetheless subject to Heck's favorable termination requirement.  Randell v. Johnson, 227 F.3d 300 (5th Cir. 2000).  See

also <u>DeLeon</u>, 488 F.3d at 654 (noting that the Fifth Circuit remains on the side of the split that views <u>Heck</u> as a Section 1983 decision rather than primarily a habeas decision). Defendants are entitled to summary judgment on the false arrest claim.

**Mike Campbell**

Mike Campbell was the chief of police for the Shreveport Police Department at the time of Plaintiff's arrest.  Plaintiff named Campbell as a Defendant, but his complaint offered no specific allegations against Campbell.  It merely described Campbell as the "supervising official" over the other officers.  Doc. 1, ¶ 8.  Campbell testifies in his affidavit that he was not on duty at the time of the incident that gave rise to this suit, and he was not present on Emery Street that evening or otherwise involved in the apprehension of Plaintiff.  Campbell moved for summary judgment based on the lack of evidence of his personal involvement in the alleged events.

   "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." <u>Roberts v. City of Shreveport</u>, 397 F.3d 287, 292 (5th Cir. 2005). The Plaintiff must show either (1) the supervisor personally was involved in a constitutional violation or (2) there was other sufficient causal connection between the supervisor's conduct and the violation.  <u>Rios v. City of Del Rio</u>, 4444 F.3d 417, 425 (5th Cir. 2006).  Plaintiff did not respond to Campbell's challenge by producing competent summary judgment evidence that might establish liability under these rules. Campbell is entitled to summary judgment.

**City of Shreveport**

Plaintiff names as a Defendant the City of Shreveport.  Doc. 1, ¶ 6. "[M]unicipalities may not be held liable [under Section 1983] on a mere *respondeat superior* theory." Lewis v. City of Shreveport, 31 Fed. Appx. 152 (5th Cir. 2001). "In order to hold a municipality liable under § 1983  for the misconduct of one of its employees, a plaintiff must allege that the municipality caused the constitutional violation through its policies or customs." Kohler v. Englade, 470 F.3d 1104, 1115 (5th Cir. 2006).

Plaintiff's complaint makes no effort to plead such a theory. The complaint includes the City in the list of defendants, but it does not make any direct allegations against the City. The City challenged Plaintiff's claims against it in its motion for summary judgment. Plaintiff's response does not point to any summary judgment evidence that would create a genuine issue of material fact with respect to a Section 1983 claim against the City.  The City is entitled to summary judgment on the Section 1983 claims, but it remains a defendant because it could be liable under *respondeat superior* in connection with the state law excessive force claim against Officer Elie.

**Conclusion**

The **Motion for Summary Judgment (Doc. 47)** is **granted** as follows.  All claims against Mike Campbell, Ronnie Gryder, Calvin Lovett, Chad Dailey and Robert Morman are **dismissed** with prejudice.  All Section 1983 claims against the City of Shreveport are **dismissed** with prejudice, but the City remains a defendant because of its potential vicarious

liability in connection with state law claims.  Plaintiff's false arrest claims are **dismissed** with prejudice to being asserted again until the <u>Heck</u> conditions are met.  <u>See</u> <u>DeLeon</u>, 488 F.3d at 657 n.38.  The motion is **denied** in all other respects.   The only remaining claims in this case are Plaintiff's state and federal excessive force claims against Officer Elie and the *respondeat superior* claim against the City based on the state excessive force claim.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of August, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE